## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL NO. 20-cr-XXX (XXX)** |
| **v.** | : | |
| | : | |
| **KEVIN CLINESMITH,** | : | **VIOLATIONS:** |
| | : | **18 U.S.C. § 1001(a)(3)** |
| **Defendant.** | : | **(False Statements)** |
| | : | |

## I N F O R M A T I O N

The United States Department of Justice charges that:

## INTRODUCTION

A.  Defendant's Background

1.      From July 12, 2015 to September 21, 2019, the defendant, **KEVIN CLINESMITH**, was employed full-time with the Federal Bureau of Investigation ("FBI") as an Assistant General Counsel in the National Security and Cyber Law Branch of the FBI's Office of General Counsel. The defendant's office was located in the J. Edgar Hoover Building in the District of Columbia.

2.      On July 31, 2016, the FBI opened a Foreign Agents Registration Act ("FARA") investigation known as Crossfire Hurricane into whether individual(s) associated with the Donald J. Trump for President Campaign were witting of and/or coordinating activities with the Russian government. By August 16, 2016, the FBI had opened individual cases under the Crossfire Hurricane umbrella on four United States persons including a United States person referred to herein as "Individual #1."

3.      The defendant was assigned to provide legal support to FBI personnel working on Crossfire Hurricane. He was one of the individuals at the FBI who communicated with another specific United States government agency (the "Other Government Agency" or "OGA") to raise questions or concerns for the Crossfire Hurricane team.

4.     In addition, as part of his responsibilities, the defendant provided support to FBI Special Agents and Supervisory Special Agents working with the National Security Division of the United States Department of Justice ("NSD") to prepare Foreign Intelligence Surveillance Act ("FISA") applications to obtain authority from the United States Foreign Intelligence Surveillance Court ("FISC") to conduct surveillance on Individual #1. There were a total of four court-approved FISA applications targeting Individual #1: the first application was approved on October 21, 2016 ("FISA #1"), and three renewal applications were approved on January 12, 2017 ("FISA #2"), April 7, 2017 ("FISA #3"), and June 29, 2017 ("FISA #4"). FISA #4 expired September 22, 2017. Each of the FISA applications alleged there was probable cause that Individual #1 was a knowing agent of a foreign power, specifically Russia.

B. <u>Individual #1's Prior Relationship With Another Government Agency</u>

5.     On August 17, 2016, prior to the approval of FISA #1, the OGA provided certain members of the Crossfire Hurricane team a memorandum ("August 17 Memorandum") indicating that Individual #1 had been approved as an "operational contact" for the OGA from 2008 to 2013 and detailing information that Individual #1 had provided to the OGA concerning Individual #1's prior contacts with certain Russian intelligence officers. The first three FISA applications did not include Individual #1's history or status with the OGA.

6.     Prior to the submission of FISA #4, Individual #1 had publicly stated that he/she had assisted the United States government in the past. During the preparation of FISA #4, an FBI Supervisory Special Agent ("SSA"), who was the affiant on FISA #4, asked the defendant to inquire with the OGA as to whether Individual #1 had ever been a "source" for the OGA.

7.     On June 15, 2017, the defendant sent an email to a liaison from the OGA ("OGA Liaison"), stating: "We need some clarification on [Individual #1]. There is an indication that he

may be a "[digraph]"[1] source. This is a fact we would need to disclose in our next FISA renewal… To that end, can we get two items from you? 1) Source Check/Is [Individual #1] a source in any capacity? 2) If he is, what is a [digraph] source (or whatever type of source he is)?"

8.      Later that same day, the OGA Liaison responded by email in which the liaison provided the defendant with a list (but not copies) of OGA documents. That list included a reference to the August 17 Memorandum the OGA had previously provided to certain members of the Crossfire Hurricane team. The liaison also wrote that the OGA uses

> the [digraph] to show that the encrypted individual...is a [U.S. person]. We encrypt the [U.S. persons] when they provide reporting to us. My recollection is that [Individual #1] was or is ... [digraph] but the [documents] will explain the details. If you need a formal definition for the FISA, please let me know and we'll work up some language and get it cleared for use.

9.      The defendant subsequently responded that same day to the OGA Liaison via email with "Thanks so much for that information. We're digging into the [documents] now, but I think the definition of the [digraph] answers our questions."

10.      On June 19, 2017, the SSA followed up with an instant message to the defendant and asked, "Do you have any update on the [OGA source] request?" During a series of instant messages between the defendant and the SSA, the defendant indicated that Individual #1 was a "subsource" and "was never a source." The defendant further stated "[the OGA] confirmed explicitly he was never a source." The SSA subsequently asked "Do we have that in writing." The defendant responded he did and that he would forward the email that the OGA provided to the defendant.

---

[1] The OGA uses a specific two-letter designation, or digraph, to describe a U.S. person who has been approved by the OGA for "operational contact."

A. Defendant's False Statement

11.     On June 19, 2017, immediately following the instant messages between the defendant and the SSA, the defendant, from his office in the Hoover Building, forwarded the OGA Liaison's June 15, 2017 email to the SSA with alterations that the defendant had made so that the OGA Liaison's email read as follows:

> My recollection is that [Individual #1] was or is "[digraph]" **and not a "source"** but the [documents] will explain the details.   If you need a formal definition for the FISA, please let me know and we'll work up some language and get it cleared for use

(emphasis added). The defendant had altered the original June 15, 2017 email from the OGA Liaison by adding the words "and not a source" to the email, thus making it appear that the OGA Liaison had written in the email that Individual #1 was "not a source" for the OGA. Relying on the altered email, the SSA signed and submitted the application to the Court on June 29, 2017. The application for FISA #4 did not include Individual #1's history or status with the OGA.

## COUNT ONE

12.     Paragraphs 1 to 11 are incorporated by reference.

13.     On or about June 19, 2017, within the District of Columbia, the defendant, **KEVIN CLINESMITH**, did willfully and knowingly make and use a false writing and document, knowing the same to contain a materially false, fictitious, and fraudulent statement and entry in a matter before the jurisdiction of the executive branch and judicial branch of the Government of the United States. Specifically, on or about June 19, 2017, the defendant altered the OGA Liaison's June 15, 2017 email by adding that Individual #1 "was not a source" and then forwarded the email to the SSA, when in truth, and in fact, and as the defendant well knew, the original June 15, 2017 email from the OGA Liaison did not contain the words "not a source."

4

(**False Statements**, in violation of Title 18, United States Code, Section 1001(a)(3).)

Respectfully Submitted,

John H. Durham
Special Attorney to the Attorney General

Neeraj N. Patel
Special Assistant United States Attorney
for the District of Columbia

Anthony Scarpelli
Assistant United States Attorney
for the District of Columbia