UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Case No. 20-cr-165 (JEB) |
| | : | |
| KEVIN CLINESMITH, | : | |
| | : | |
| Defendant. | : | |

**STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA**

**I.    Summary of the Plea Agreement**

Defendant Kevin Clinesmith agrees to admit guilt and enter a plea of guilty to a one-count Information charging him with False Statements, in violation of Title 18 U.S.C. § 1001(a)(3).

**II.    Elements of the Offenses**

The essential elements of the offense of False Statements, in violation of Title 18 U.S.C. § 1001(a)(3), each of which the government must prove beyond a reasonable doubt, are:

1. On or about June 19, 2017, the defendant made or used a false writing or document;

2. The writing or document contained a statement or entry that was false, fictitious or fraudulent;

3. The statement or entry was material;

4. The defendant acted knowingly and willfully; and

5. The writing or document pertained to a matter within the jurisdiction of the executive branch or judicial branch of the Government of the United States.

### III. Penalties for the Offense

The penalties for False Statements, in violation of Title 18 U.S.C. § 1001(a)(3), are as follows:

(A) a term of imprisonment not greater than five years;

(B) a fine not to exceed $250,000;

(C) a term of supervised release of not more than three years, after any period of incarceration;

(D) a special assessment of $100.

### IV. Statement of the Facts

Pursuant to Federal Rule of Criminal Procedure 11, the United States and the defendant, Kevin Clinesmith, stipulate and agree that had this case gone to trial, the government's evidence would prove the following beyond a reasonable doubt:

#### A. Defendant's Background

1. The defendant is a lawyer and was admitted to practice law in November 2007.

2. From July 12, 2015 to September 21, 2019, the defendant was employed full-time with the Federal Bureau of Investigation ("FBI") as an Assistant General Counsel in the National Security and Cyber Law Branch of the FBI's Office of General Counsel. The defendant's office was located in the J. Edgar Hoover Building ("Hoover Building") in the District of Columbia.

3. As part of the defendant's duties and responsibilities, the defendant assisted FBI Special Agents and Supervisory Special Agents in connection with applications prepared by the FBI and the National Security Division of the United States Department of Justice ("NSD") to conduct surveillance under the Foreign Intelligence Surveillance Act ("FISA").

#### B. Crossfire Hurricane and the FISA Applications on Individual #1

4. On July 31, 2016, the FBI opened a Foreign Agents Registration Act ("FARA")

investigation known as Crossfire Hurricane into whether individual(s) associated with the Donald J. Trump for President Campaign were witting of and/or coordinating activities with the Russian government. By August 16, 2016, the FBI had opened individual cases under the Crossfire Hurricane umbrella on four United States persons including a United States person referred to herein as "Individual #1."

5. The defendant was assigned to provide legal support to FBI personnel working on Crossfire Hurricane. He was one of the individuals at the FBI who communicated with another specific United States government agency (the "Other Government Agency" or "OGA") to raise questions or concerns for the Crossfire Hurricane team.

6. In addition, as part of his responsibilities, the defendant provided support to FBI Special Agents and Supervisory Special Agents working with the NSD to prepare FISA applications to obtain authority from the United States Foreign Intelligence Surveillance Court ("FISC") to conduct surveillance on Individual #1. There were a total of four court-approved FISA applications targeting Individual #1: the first application was approved on October 21, 2016 ("FISA #1"), and three renewal applications were approved on January 12, 2017 ("FISA #2"), April 7, 2017 ("FISA #3"), and June 29, 2017 ("FISA #4"). FISA #4 expired September 22, 2017. Each of the FISA applications alleged there was probable cause that Individual #1 was a knowing agent of a foreign power, specifically Russia.

        C.      <u>Individual #1's Prior Relationship With Another Government Agency</u>

7. On August 17, 2016, prior to the approval of FISA #1, the OGA provided certain members of the Crossfire Hurricane team a memorandum ("August 17 Memorandum") indicating that Individual #1 had been approved as an "operational contact" for the OGA from 2008 to 2013 and detailing information that Individual #1 had provided to the OGA concerning Individual #1's

prior contacts with certain Russian intelligence officers. As noted below, the defendant told the Department of Justice Office of the Inspector General ("DOJ OIG") that he did not recall reviewing the August 17 Memorandum and he did not have access to it at the Office of General Counsel office space. However, the document, which was located at another location at the Hoover Building, was available to the Special Agents and Supervisory Special Agents on the Crossfire Hurricane team, and the defendant, upon request.

8. The first three FISA applications did not include Individual #1's history or status with the OGA.

9. Prior to the submission of FISA #4, Individual #1 had publicly stated that he/she had assisted the United States government in the past. During the preparation of FISA #4, an FBI Supervisory Special Agent ("SSA"), who was the affiant on FISA #4, asked the defendant to inquire with the OGA as to whether Individual #1 had ever been a "source" for the OGA.

10. The defendant knew that if Individual #1 had been a source with the OGA, that information would need to be disclosed in the FISA renewal request. In a voluntary interview with the DOJ OIG, the defendant stated there was "a big, big concern from both [the NSD's Office of Intelligence][1] and from the FBI that we had been targeting a source, because that should never happen without us knowing about it." The defendant indicated he knew that if it were true, they would "need to provide [the information] to the court" because such information would "drastically change[] the way that we would handle ... [the] FISA application."

11. On June 15, 2017, the defendant sent an email to a liaison from the OGA ("OGA Liaison"), stating: "We need some clarification on [Individual #1]. There is an indication that he

---

[1] The Office of Intelligence is responsible for preparing and filing all applications for Court orders pursuant to FISA, and working with the FBI to do so.

may be a "[digraph]"[2] source. This is a fact we would need to disclose in our next FISA renewal… To that end, can we get two items from you? 1) Source Check/Is [Individual #1] a source in any capacity? 2) If he is, what is a [digraph] source (or whatever type of source he is)?"

12. Later that same day, the OGA Liaison responded by email in which the liaison provided the defendant with a list (but not copies) of OGA documents. That list included a reference to the August 17 Memorandum the OGA had previously provided to certain members of the Crossfire Hurricane team. The liaison also wrote that the OGA uses

> the [digraph] to show that the encrypted individual…is a [U.S. person]. We encrypt the [U.S. persons] when they provide reporting to us. My recollection is that [Individual #1] was or is … [digraph] but the [documents] will explain the details. If you need a formal definition for the FISA, please let me know and we'll work up some language and get it cleared for use.

13. The defendant subsequently responded that same day to the OGA Liaison via email with "Thanks so much for that information. We're digging into the [documents] now, but I think the definition of the [digraph] answers our questions."

14. In one of the defendant's voluntary interviews with DOJ OIG, he stated he "didn't know the details of . . . the content of the [documents identified in the liaison's email]" and "didn't have access to [those documents] in the [Office of General Counsel] space." He further stated that he did not recall ever reviewing the documents referenced in the liaison's email. However, the documents, which were located at another location at the Hoover Building, were available to the Special Agents and Supervisory Special Agents on the Crossfire Hurricane team, and the defendant, upon request.

15. On June 19, 2017, SSA followed up with an instant message to the defendant and asked, "Do you have any update on the [OGA source] request?" During a series of instant messages

---

[2] The OGA uses a specific two-letter designation, or digraph, to describe a U.S. person who has been approved by the OGA for "operational contact."

between the defendant and the SSA, the defendant indicated that Individual #1 was a "subsource" and "was never a source." The defendant further stated "[the OGA] confirmed explicitly he was never a source." The SSA subsequently asked "Do we have that in writing." The defendant responded he did and that he would forward the email that the OGA provided to the defendant.

### D. Defendant's False Statement

16. On June 19, 2017, immediately following the instant messages between the defendant and the SSA, the defendant, from his office in the Hoover Building, forwarded the OGA Liaison's June 15, 2017 email to the SSA with alterations that the defendant had made so that the OGA Liaison's email read as follows:

> My recollection is that [Individual #1] was or is "[digraph]" **and not a "source"** but the [documents] will explain the details. If you need a formal definition for the FISA, please let me know and we'll work up some language and get it cleared for use

(emphasis added). The defendant had altered the original June 15, 2017 email from the OGA Liaison by adding the words "and not a source" to the email, thus making it appear that the OGA Liaison had written in the email that Individual #1 was "not a source" for the OGA. Relying on the altered email, the SSA signed and submitted the application to the Court on June 29, 2017. The application for FISA #4 did not include Individual #1's history or status with the OGA.

17. In truth, and in fact, and as the defendant well knew, the original June 15, 2017 email from the OGA Liaison did not contain the words "not a source," and therefore, when the defendant altered and forwarded the email on June 19, 2017, the defendant made and used a writing or document, specifically an email, that contained a statement or entry he knew was materially false; in doing so the defendant acted knowingly and willfully; and the email pertained to a matter within both the jurisdiction of the executive branch and judicial branch of the Government of the United States.

18. This proffer of evidence is not intended to constitute a complete statement of all facts known by the parties, but is a minimum statement of facts intended to provide the necessary factual predicate for the guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the defendant's plea of guilty to the charged crime. This Statement of the Offense fairly and accurately summarizes and describes the defendant's actions and involvement in the offense to which he is pleading guilty.

Respectfully Submitted,

_____
John H. Durham
Special Attorney to the Attorney General

Neeraj N. Patel
Special Assistant United States Attorney
for the District of Columbia

Anthony Scarpelli
Assistant United States Attorney
for the District of Columbia

## DEFENDANT'S ACKNOWLEDGMENT

I have read the Statement of Offense setting forth the facts related to my guilty plea to False Statements, in violation of Title 18 U.S.C. § 1001(a)(3). I have discussed this proffer fully with my attorneys, Justin Shur, Esquire, Megan Cunniff Church, Esquire, and Emily Damrau, Esquire. I fully understand this proffer and I acknowledge its truthfulness, agree to it and accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this proffer fully.

Date: 8-14-2020

_____
Kevin Clinesmith
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting the government's proffer of evidence related to my client's guilty plea to False Statements, in violation of Title 18 U.S.C. § 1001(a)(3). I have reviewed the entire proffer with my client and have discussed it with him fully. I concur in my client's agreement with and acceptance of this proffer.

Date: 8-14-2020

_____
Justin Shur, Esquire
Attorney for Defendant

Date: 8-14-2020

_____
Emily Damrau, Esquire
Attorney for Defendant

Date: 8-14-2020

_____
Megan Cunniff Church, Esquire
Attorney for Defendant