**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KEVIN CLINESMITH,<br><br>            Defendant. | No. 20 Cr. 165 (JEB) |

**OPPOSITION TO MOTION OF AMICI CURIAE
FOR LEAVE TO FILE AN AMICUS BRIEF**

Kevin Clinesmith, by and through undersigned counsel, respectfully submits this Opposition to Amici's Motion for Leave to File an Amicus Brief, Dkt. 28.

Amici's motion should be denied.  As Amici admit, they present a theory of the meaning of "harm" within the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771, not presented in Carter Page's CVRA Motion.  Amici recognize that Page claims harm arising from the issuance of the fourth FISA warrant.  Thus, Page's motion presents a straightforward question:  Did the offense at issue directly and proximately cause the fourth warrant to issue?  Amici seek to inject a different issue entirely into this case: whether "harm" under § 3771 means "risk of harm," and therefore whether Page can prove that he was "harmed" by Clinesmith's offense without showing that the offense caused the fourth warrant to be approved.  But that issue is not properly before the Court.  It is well established that courts do not consider arguments raised by amici but not by the parties.[1]  Accordingly, whatever the merits of Amici's argument or the academic interest it stimulates, Amici's brief is unhelpful to the Court's resolution of the issues actually before it.  Their motion should be denied for that reason alone.

---

[1] While Page is not a party to this case, he effectively is with respect to the issues presented in his CVRA motion.

Amici's brief is also unnecessary, even beyond the fact that it addresses a matter that the parties do not raise.  Page is represented by experienced counsel.  This is not a case where the Court must appoint an amicus to assist an unrepresented party.  Nor is it a case, like those cited by Amici, where the court appointed an amicus to address an issue on which all parties to the case agree because the court determined it had an independent obligation to consider counterarguments to the parties' position.  Instead, the issues raised in Page's motion will be contested by, at a minimum, counsel for Clinesmith, and potentially the Government as well.  An amicus brief is thus unnecessary to ensure adverse presentation of the issues.

Amici also are unable to provide meaningful assistance with respect to the factual causation issues at the center of Page's motion.  Amici have no special expertise regarding the FISA process, FBI or DOJ procedures, or the events underlying this case.  And Amici will not be affected by the Court's ruling as to those case-specific factual issues.

Finally, the Court lacks authority under its Local Rules to accept amicus briefs at all, and there is a serious question as to whether the Court has inherent authority to do so in light of its adoption in 2015 of a Local *Civil* Rule permitting amicus briefs without the adoption of a corresponding criminal rule.  In any case, even if the Court has inherent authority to permit an amicus brief, the absence of a local criminal rule allowing amicus briefs counsels in favor of exercising that inherent authority only where the need for the assistance of an amicus is most acute.  This is far from such an occasion.  The Court should therefore deny Amici's motion for leave.

## PROCEDURAL BACKGROUND

On August 19, 2020, Clinesmith pleaded guilty to one count of making or using a false writing or document, in violation of 18 U.S.C. § 1001(a)(3).  Minute Entry (Aug. 19, 2020).

Sentencing was set for December 10, 2020.  *Id.*  Before the Probation Office issued its draft Presentence Investigation Report on November 5, 2020, counsel for Carter Page had "reached out to the Probation Office and indicated that Mr. Page believes he is a victim in the instant offense."  Dkt. 16 at ¶25.  The Probation Office provided his counsel with a Victim Impact Statement and Declaration of Loss.  *Id.*  Page then waited until December 3, 2020—the day the Government's and Clinesmith's sentencing submissions were due—to provide Clinesmith with a copy of his Motion for Relief Under the Crime Victims' Rights Act, which was filed on the docket the following day.  Dkt. 23.  That necessitated a delay of the Court's sentencing from December 10, 2020 to January 7, 2021.  Minute Order (Dec. 4, 2020).  The Court then set a December 18, 2020 deadline for the Government and Clinesmith to respond to Page's motion and a December 28, 2020 deadline for Page to reply.  *Id.*

Subsequently, on December 17, 2020, Amici filed their motion for leave to file their amicus brief.[2]  The Court then set a December 21, 2020 deadline for any opposition and held in abeyance the deadline for Clinesmith and the Government to respond to Page's CVRA motion. Minute Orders (Dec. 17, 2020 & Dec. 18, 2020).

## ARGUMENT

### I.   The Court Should Decline to Grant Amici Leave to File Their Brief

Even if the Court has authority to accept an amicus brief,[3] it should not do so here.  Local Civil Rule 7(o), although not applicable, is helpful in guiding the Court's analysis.  A motion for leave to file an amicus brief must, among other things, "set forth . . . why the movant's position

---

[2] Amici emailed that motion to the Court and the parties the previous day.  Additionally, counsel for Amici had emailed the Government and Clinesmith a high-level outline of their brief on December 11, a draft of the table of contents to their brief on December 14, and a draft copy of the brief on December 15.

[3] Whether the Court has authority to accept an amicus brief is discussed *infra* in Part II.

is not adequately represented by a party, and why the matters asserted are relevant to the disposition of the case."   LCvR 7(o)(2).   Courts deny leave to file unless a "party is not represented competently or is not represented at all," the amicus "has an interest in some other case that may be affected by the decision in the present case," or the amicus "has unique information or perspective that can help the court beyond the help the lawyers for the parties are able to provide."   *Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 137 (D.D.C. 2008) (quoting *Ryan v. CFTC*, 125 F.3d 1062, 1064 (7th Cir. 1997)).   While amici are fairly common in the courts of appeals and the Supreme Court where precedential opinions on questions of law have a direct impact far beyond the parties to a particular case, "[a]t the trial level," where decisions have no binding precedential effect and issues of fact are often at the center of a case, amicus briefs are less appropriate.   *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 82 (D.N.J. 1993).

First and most critically, Amici's proposed brief is not "help[ful]" because it does not pertain to "matters . . . relevant to the disposition of the case."   LCvR 7(o)(2); *see Jin*, 557 F. Supp. 2d at 137.   Amici admit that they seek to submit arguments ***not presented*** in Page's CVRA motion and therefore not properly before the Court.   Dkt. 28 at 7-8; *see, e.g.*, *FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 226 n.4 (2013) (declining to consider argument presented by amicus where it was not raised below or presented by the parties); *CSX Transp., Inc. v. Surface Transp. Bd.*, 754 F.3d 1056, 1064 (D.C. Cir. 2014) (declining to consider arguments raised only in an amicus brief); *see also, e.g.*, *In re Isaacs*, 895 F.3d 904, 917 (6th Cir. 2018) ("'While an amicus may offer assistance in resolving issues properly before a court, it may not raise additional issues or arguments not raised by the parties.'").   The Court should deny Amici leave to file for that reason alone.

Page, in arguing that he is a crime victim pursuant to 18 U.S.C. § 3771(e)(2)(A), must prove that he is "a person directly and proximately harmed as a result of the commission of a Federal offense."  To that end, Page identifies two types of harm: (1) "tangible harm **as a result of the 4th FISA Warrant**" to his pecuniary interests, and (2) "the intangible harm of being unlawfully spied upon for three months of his life."  Dkt. 23-2 at 6 (emphasis in original).  He is clear that he allegedly suffered harm "because the 4th FISA warrant **was issued**."  *Id.* at 9 (emphasis added).  The parties, however, dispute whether that alleged harm was "directly and proximately" caused by Clinesmith's false statement.  Thus, the issue before the Court is a narrow, primarily factual question of causation.

Amici, however, argue something else entirely.  Unlike Page, whose theory of harm is predicated on whether Clinesmith caused the fourth FISA warrant to issue, Amici seek to submit a novel theory of harm that they explicitly recognize Page does not present.  Dkt. 28 at 7-8.  Specifically, they contend that exposing someone to a mere "risk of harm" is itself "harm" under § 3771.  Dkt. 28-1 at 9-11; *id.* at 14 (arguing that Clinesmith "victimiz[ed] [Page] by creating a **risk** that the FISC might improperly authorize surveillance based on falsified information" (emphasis added)); *see also* Dkt. 28 at 8.  Putting aside that Amici's theory cannot be reconciled with the text of § 3771, Amici's submission is simply irrelevant to the live issues before the Court: those put into dispute by the parties.[4]  Consequently, the proposed amicus brief, while perhaps of academic interest, is unhelpful to the Court's resolution of the issues actually before it and should therefore not be considered.  *See Lever Bros. Co. v. United States*, No. 92-5185, 1992

---

[4] To the extent Page would seek to expand his arguments to encompass those presented by Amici in his reply brief, he may not.  *Hudson v. Am. Fed'n of Gov't Emps.*, No. 17-cv-1867, 2020 WL 4335507, at *4 (D.D.C. July 28, 2020) (Boasberg, J.) ("New arguments made in a reply brief are forfeited." (quoting *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 204 n.4 (D.D.C. 2016))); *see also Alon Refin. Krotz Springs, Inc. v. EPA*, 936 F.3d 628, 664 (D.C. Cir. 2019).

WL 443768, at *1 (D.C. Cir. Aug. 21, 1992) (explaining that courts have discretion "to deny an *amicus* motion, on grounds that participation would be unhelpful"); *Hopi Tribe v. Trump*, Nos. 17-cv-2590, 17-cv-2605, 17-cv-2606, 2019 WL 2494161, at *3 (D.D.C. Mar. 20, 2019) (noting that courts deny leave to file an amicus brief where the proposed amicus seeks "to present arguments and insights that [are] not relevant"); *Price v. Corzine*, No. 06-cv-1520, 2006 WL 2252208, at *3 (D.N.J. Aug. 7, 2006) (denying the ACLU leave to file an amicus brief where their proposed brief made arguments that ran "directly contrary to both Plaintiffs' allegations and their argument against Defendants' motion to dismiss").

Second, Page is ably represented by experienced counsel, which weighs in favor of denying leave to file. *See Jin*, 557 F. Supp. 2d at 137; *Price*, 2006 WL 2252208, at *3 (denying the ACLU leave to file an amicus brief in part because "Plaintiffs are adequately represented by competent counsel"). On his behalf, Page's attorneys filed a detailed seventeen-page motion, along with supporting exhibits, to make Page's case. An amicus is not required to ensure adequate adversarial presentment of the issues. Moreover, the Court will also have the benefit of briefs filed by the government and defense counsel. If two is company, and three is a crowd, four exceeds capacity, especially in light of the compressed schedule necessitated by the CVRA and the fact that sentencing has already been delayed. *See* § 3771(d)(3) (requiring the district court to decide a CVRA motion "forthwith" and requiring the court of appeals to rule on a petition for mandamus challenging the district court's ruling within 72 hours); *see* Minute Order, *United States v. Stone*, No. 19-cr-18-ABJ-1 (D.D.C. Feb. 28, 2019) (observing that "a criminal proceeding is not a free for all"); *see also Jin*, 557 F. Supp. 2d at 137; *Esther Sadowsky Testamentary Tr. ex rel. Home Loan Mortg. Corp. v. Syron*, No. 08-cv-5221, 2009 WL 1285982,

at *3 (S.D.N.Y. May 6, 2009) (denying leave to file an amicus brief where "all parties [were] adequately represented by counsel").

Third, even putting aside that district court decisions have no binding precedential effect, the issue before the Court requires a fact-intensive inquiry unique to this case: whether Page has proven that (1) but for Clinesmith's offense, the FBI and DOJ would have disclosed to the FISC that Page was an OGA operational contact between 2008 and 2013, and (2) the absence of that disclosure was the but-for and proximate cause of the FISC issuing the fourth FISA warrant. Thus, Amici do not "ha[ve] an interest in some other case that may be affected by the decision in the present case." *Jin*, 557 F. Supp. 2d at 137. Indeed, to the extent Amici have an interest in courts generally accepting the novel theory of "harm" they present, this case will have no effect because Amici's theory is not presented by the parties and will not be addressed by the Court. Additionally, Amici's input as to the complex issues of fact in this case—with which the parties are intimately familiar—will only complicate the Court's analysis. Indeed, because of Amici's unfamiliarity with the facts and the intricacies of the FISA process more generally, they misstate basic facts, *e.g.*, Dkt. 28-1 at 12 (arguing that Clinesmith provided false information to "his supervisor who prepared the FISA warrant" where, in fact, the SSA did not prepare the application (an attorney from the DOJ did with assistance from an FBI case agent), nor was the SSA Clinesmith's supervisor), and otherwise offer no useful insight into the factual questions before the Court.

Finally, the cases Amici rely upon are inapposite. Amici cite the court's appointment of a former federal judge as an amicus in *United States v. Flynn*. Dkt. 28 at 9. But there, an amicus was necessary due to a breakdown in the adversarial process: both the government and the defendant had taken the same side regarding the government's motion to dismiss. *See In re*

*Flynn*, 973 F.3d 74, 82 (D.C. Cir. 2020) (en banc) (explaining that the district court appointed an amicus "to ensure adverse presentation of the issues"). The same is true for *United States v. Saena Tech Corp.*, 140 F. Supp. 3d 11 (D.D.C. 2015) (cited at Dkt. 28 at 9). There, the court was tasked with assessing a deferred-prosecution agreement and had "concerns regarding the 'fundamental fairness of th[e] agreement.'" *Saena Tech*, 140 F. Supp. 3d at 18. The court therefore appointed an amicus, noting that the "case was 'nontraditional' in that '[t]here's no one else in the courtroom raising concerns' and 'the Court cannot be an advocate.'" *Id.* at 19. This case is nothing like *Flynn* or *Saena Tech*. Here, Page and Clinesmith certainly do not agree; the matter before the Court is in sharp dispute.[5]

Accordingly, assuming the Court has authority to accept amicus briefs, it should not do so here.

## II. This Court's Local Rules Do Not Permit Amicus Briefs in Criminal Cases, and the Court's Inherent Authority to Accept Such Briefs Is in Doubt

This Court's Local Criminal Rules do not permit filing amicus briefs. While Local ***Civil*** Rule 7(o) explicitly provides a procedure and standard under which potential amici may seek the

---

[5] The cases from this district that Amici relegate to a footnote are likewise unhelpful to their cause. *See* Dkt. 28 at 9 n.2. All but one of the cited cases involve the court appointing the ACLU or the Federal Public Defender in criminal cases to assist criminal defendants (while the record is not clear, presumably the court was concerned with the quality of the defendants' representation), or to assist in evaluating issues ***properly before the court***. The other case deals with an attorney ethics issue where the court appointed a legal "ethics expert to advise the Court" by preparing a "report with a recommendation to the Court regarding the appropriate referrals for discipline, if any," related to potential misconduct by an Assistant United States Attorney. Minute Order, *United States v. Pitts*, No. 19-cr-49-EGS (D.D.C. July 30, 2019). The court had previously dismissed the indictment with prejudice more than two months before. *Id.*, Dkt. 38. The out-of-district cases that amici cite (at Dkt. 28 at 10 n.3) also do not help Amici. Clinesmith does not dispute that, assuming this Court has power to entertain amicus briefs at all, that it may exercise its discretion to do so where it finds that an amicus brief might be especially helpful or that the parties' briefs are insufficient. But here, Amici admittedly seek to present arguments not presented in Page's motion, and Page, Clinesmith, and the Government are represented by experienced counsel who will brief the matter before the Court.

Court's leave to file an amicus brief, there is no corresponding rule within the Local Criminal Rules. And although Local Civil Rule 1.1(a) and Local Criminal Rule 1.1 state that "[t]hese Rules govern all proceedings in" this Court, once the rules are placed in the context of their broader structure, it is clear that civil rules apply in civil cases, and criminal rules apply in criminal cases. *See Make The Road N.Y. v. Wolf*, 962 F.3d 612, 624 (D.C. Cir. 2020) (statutory text must be read "in light of the statutory structure and context"); *Yousuf v. Samantar*, 451 F.3d 248, 255 (D.C. Cir. 2006) ("customary tools of statutory interpretation" apply to the construction of procedural rules). This is confirmed by the inclusion of numerous identical provisions in both the criminal and civil rules, including certain subsections of Local Civil Rule 7 itself. *Compare, e.g.*, LCvR 7(a)-(f), *with* LCrR 47(a)-(f) (rules for motion practice, such as page limitations and briefing schedules); LCvR 5.1(a), *with* LCrR 49(f)(1) (rules for correspondence with the court); LCvR 40.10, *with* LCrR 57.16 (rules for complaints against judges); LCvR 83.3, *with* LCrR 44.2 (rules for number of counsel on each side who may examine a witness). If the civil rules applied in all criminal proceedings (and the criminal rules in all civil cases) then the two sets of rules would not need to restate provisions. *See Menoken v. Dhillon*, 975 F.3d 1, 9 (D.C. Cir. 2020) (applying the canon against surplusage).

Moreover, courts decline to read language into a provision where it is explicitly included in another parallel provision. *See, e.g.*, *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005) ("We do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply, and our reluctance is even greater when Congress has shown elsewhere in the same statute that it knows how to make such a requirement manifest."); *Aishat v. U.S. Dep't of Homeland Sec.*, 288 F. Supp. 3d 261, 267 (D.D.C. 2018) (Boasberg, J.). The issue before the Court presents a textbook example of this fundamental rule of construction.

Because (1) the Local Civil Rules expressly include a provision governing the filing of amicus briefs while the Local Criminal Rules contain no such provision, and (2) the two sets of rules otherwise frequently repeat rules, this Court's governing local rules do not permit the filing of amicus briefs in criminal cases.

While some judges within this district have asserted "inherent authority" to appoint amici or accept amicus briefs, *see, e.g.*, *United States v. Flynn*, No. 17-cr-232 (EGS), 2020 WL 2466326, at *1 (D.D.C. May 13, 2020), there is a serious question as to whether that inherent authority may "circumvent or conflict" with binding procedural rules, *Carlisle v. United States*, 517 U.S. 416, 425-26 (1996) ("Whatever the scope of [the district court's] 'inherent power,' however, it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure."); *McKeever v. Barr*, 920 F.3d 842, 845 (D.C. Cir. 2019); *United States v. Hall*, 214 F.3d 175, 178 (D.C. Cir. 2000) (trial courts' inherent authority cannot trump governing procedural rules).  Local rules carry "the force of law," like a statute or a federal rule of procedure.  *Hollingsworth v. Perry*, 558 U.S. 183, 191 (2010).  As explained above, the clear meaning of this Court's local rules is that amicus briefs are permitted in civil cases only.

To be sure, "courts 'do not lightly assume'" that a rule "reduces the 'scope of a court's inherent power,'" *McKeever*, 920 F.3d at 848 (Federal Rule of Criminal Procedure barred the exercise of inherent authority) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991)), at least where that inherent power is "long unquestioned," *Carlisle*, 517 U.S. at 426.  Where a rule contains a sufficiently "clear expression" that would reduce the scope of a court's inherent

power, however, even well-established inherent authority will not survive the promulgation of the rule. *McKeever*, 920 F.3d at 848.[6]

Here, although there is no Local Criminal Rule expressly stating that amicus briefs are not permitted in criminal cases, that is the clear meaning of the local rules once their structure is considered as a whole. The Court adopted Local Civil Rule 7(o) in 2015. *See* Order (D.D.C. June 2, 2015), https://www.dcd.uscourts.gov/sites/dcd/files/local_rules/LCvR7BriefAmicus Curiae060215FINAL.pdf.[7] The adoption of only a civil rule and not a corresponding criminal rule has one obvious interpretation: Amicus briefs are permitted in civil cases pursuant to Local Civil Rule 7(o), but are not permitted in criminal cases. If the Court did not seek to displace its inherent authority to accept amicus briefs through its local rules, Rule 7(o) would serve no purpose, nor would its inclusion in only the civil rules. Indeed, where the Court intends to preserve prior existing inherent authority that could be called into question from the promulgation of local rules, it does so explicitly. *See, e.g.*, LCvR 83.13(b) (noting that "[n]othing contained in these Rules shall be construed . . . to deprive any judge or magistrate of his/her inherent power of discipline for conduct committed in the presence of the Court."). Thus, there is reason to think that the Court abrogated its inherent authority concerning amicus briefs with the adoption of Local Civil Rule 7(o) in 2015.

---

[6] In *In re Flynn*, 973 F.3d 74 (D.C. Cir. 2020) (en banc), the court of appeals concluded that mandamus was unavailable to compel the district court to grant the government's Rule 48(a) motion and vacate the appointment of an amicus. *Id.* at 79. In doing so, the court considered whether the appointment of an amicus was a "clearly, indisputably impermissible intrusion upon Executive authority." *Id.* at 81. The court determined that it was not. *Id.* But the court did not resolve the question now before this court regarding the scope of the local rules and their effect on district courts' inherent authority. *See id.*

[7] In accepting amicus briefs, district courts have also cited Federal Rule of Appellate Procedure 29. *See Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 136 (D.D.C. 2008). While that appellate rule surely could inform a district court's discretion to accept an amicus brief (where it has authority to do so), the rule does not apply to district court proceedings. *See* Fed. R. App. P. 1(a).

In short, the Court lacks authority to accept Amici's proposed amicus brief pursuant to the Local Rules, and there is a serious question as to the existence of "inherent authority" to accept an amicus brief in a criminal case.  But even if the Court could exercise its inherent authority to grant Amici leave to file their brief, the absence of a criminal rule corresponding to Local Civil Rule 7(o) at least counsels in favor of exercising of that authority only where the need is greatest.  This is not such a case.

## **CONCLUSION**

For the foregoing reasons, the Court should deny Amici's motion for leave to file an amicus brief and remove Amici's brief from the docket, Dkt. 28-1.

Dated:    December 21, 2020
          Washington, D.C.

Respectfully submitted,

 /s/ Justin V. Shur
Justin V. Shur
Emily K. Damrau
MOLOLAMKEN LLP
600 New Hampshire Avenue, N.W.
Washington, D.C.  20037
Telephone:  (202) 556-2000
Facsimile:  (202) 556-2001

Megan Cunniff Church
Jordan A. Rice
MOLOLAMKEN LLP
300 N. LaSalle Street, Suite 5350
Chicago, IL  60654
Telephone:  (312) 450-6700
Facsimile:  (312) 450-6701

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 21st day of December, 2020, I transmitted an electronic copy of the foregoing via e-mail to the counsel for Amici.  I further certify that today, December 21, 2020, I electronically filed the foregoing with the Clerk of the Court for the U.S. District Court for the District of Columbia using the CM/ECF system.  All participants in this case who are registered CM/ECF users will be served by the CM/ECF system.

/s/ Justin V. Shur