UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Crim. No. 20-cr-165 (JEB) |
| | : |
| KEVIN CLINESMITH, | : |
| | : |
| Defendant. | : |

**GOVERNMENT'S MEMORANDUM IN RESPONSE TO CARTER PAGE'S**
**MOTION FOR RELIEF UNDER THE CRIME VICTIMS' RIGHTS ACT**

The United States of America (the "government") respectfully submits this memorandum in response to Carter Page's[1] motion for relief under the Crime Victims' Rights Act, Doc. 23-2 ("Dr. Page's Motion") and the amicus brief filed in support of his motion, Doc. 36 ("Amicus Brief").[2] In his motion, Dr. Page asks the Court to (1) confirm his status as a victim under 18 U.S.C. § 3771 and 18 U.S.C. § 3663, (2) permit Dr. Page to be heard at the defendant's sentencing hearing, and (3) award Dr. Page restitution. *See* Dr. Page's Motion at 17. In a supplemental filing, Doc. 35 ("Dr. Page's Supplement"), Dr. Page clarified that he is asking the Court to find that he is entitled to an award of restitution, but he is not asking the Court to determine the amount of restitution. Instead, he states that the pending civil case he has filed against the defendant and others "can fully vindicate Dr. Page's right to a specific amount of monetary damages." Dr. Page's Supplement at 5.

---

[1] Carter Page (referred to herein as Dr. Page) is the individual referred to as "Individual #1" in the Information, Statement of Offense, and the parties' sentencing memoranda.

[2] On December 22, 2020, the Court granted leave for the National Crime Victim Law Institute, the National Organization for Victim Assistance, the National Center for Victims of Crime, Arizona Voice for Crime Victims, the Ohio Crime Victim Justice Center, and the Utah Crime Victims' Legal Clinic to file an amicus brief in support of Dr. Page's motion. *See* Minute Order dated Dec. 22, 2020.

As set forth more fully below, while Dr. Page does not meet the particular statutory definition of victim for purposes of 18 U.S.C. § 3771, the government has no objection to Dr. Page speaking at the defendant's sentencing hearing. As the Court already knows, it has the discretion to consider any information that bears on the background, character, and conduct of the defendant, including hearing from Dr. Page at sentencing. Indeed, the government submits that the Court should hear from Dr. Page before imposing sentence. With respect to restitution, the defendant also does not meet the relevant definition of victim under 18 U.S.C. § 3663, and therefore the Court need not make any type of restitution determination. However, even if the Court were to find that he is a victim for purposes of restitution, the Court should decline to quantify the amount of restitution. Dr. Page notes that his pending civil case is the better forum for considering the amount of any monetary damages.

**I.        Factual Background**

On August 19, 2020, the defendant waived indictment and pleaded guilty to one count of making false statements in violation of 18 U.S.C. § 1001(a)(3). The facts underlying the defendant's conviction are set forth in the Statement of Offense filed in this case on August 19, 2020, Doc. 9, and the government's sentencing memorandum, Doc. 22.

In summary, the defendant—an FBI attorney in the Office of General Counsel—was the principal line attorney assigned to provide legal support to the FBI's Crossfire Hurricane team, which was investigating whether individuals associated with the Donald J. Trump for President Campaign were coordinating activities with the Russian government. Among other things, the defendant worked on applications to the United States Foreign Intelligence Surveillance Court ("FISC") to conduct surveillance on Dr. Page pursuant to the Foreign Intelligence Surveillance

Act ("FISA"). There were a total of four court-approved FISA applications that alleged there was probable cause that Dr. Page was a knowing agent of a foreign power, specifically Russia, which allowed the FBI to conduct surveillance on him for nearly a year, from October 2016 to September 2017.

On June 19, 2017, prior to the submission of the fourth FISA application, the defendant materially altered an email he received from another U.S. government agency ("OGA") regarding Dr. Page's prior relationship with that OGA. Specifically, the defendant added that Dr. Page was "not a source" for the OGA, when in fact he had been approved as an "operational contact" for the OGA from 2008 to 2013—overlapping in time with his interactions with known Russian intelligence officers described in the FISA applications. An OGA liaison later told the Department of Justice's ("DOJ") Office of Inspector General ("OIG") that Dr. Page was a source using the FBI's terminology. The defendant sent the altered email to an FBI Supervisory Special Agent ("SSA"), who was the affiant on the final application. Relying on the altered email, the SSA signed and submitted the final FISA application to the FISC on June 29, 2017, without detailing Dr. Page's prior relationship with the OGA.

The OIG subsequently conducted a review of the four FISA applications targeting Dr. Page. In addition to discovering the defendant's conduct in altering the OGA email, the OIG discovered numerous other misstatements and omissions in the four FISA applications. The DOJ later acknowledged that with respect to the final two FISA applications, there was "insufficient predication to establish probable cause to believe that [Dr. Page] was acting as an agent of a foreign power." *See* Order Regarding Handling and Disposition of Information, Docket Nos. 16-1182, 17-52, 17-375, 17-679 (FISA Ct. Jan. 7, 2020).

As the FISC later noted, Dr. Page's prior relationship with the OGA was "relevant in assessing the import of more recent contact Page was alleged to have had with other individuals connected to the Russian government." Corrected Opinion and Order at 4-5, *In Re Accuracy Concerns Regarding FBI Matters Submitted to the FISC*, Docket No. Misc. 19-02 (FISA Ct. Mar. 5, 2020). However, the FISC has not indicated whether or not it would have granted the fourth application had the application disclosed Dr. Page's prior relationship with the OGA but not the other misstatements and omissions.

## II.   Applicable Law

The Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771, provides "crime victims" with certain rights in the criminal process, including, among other things, the right (1) to be reasonably protected from the accused; (2) to notice of public proceedings involving the accused; (3) not to be excluded from such public proceedings; (4) to be reasonably heard at any public proceedings involving release, plea, sentencing, or parole; (5) to reasonably confer with the prosecutors; (6) to full and timely restitution; (7) to proceedings without unreasonable delay; and (8) to be treated with fairness and with respect for the victim's dignity and privacy. *See* 18 U.S.C. § 3771(a)(1)-(8).  A "crime victim" is defined by the statute as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C. § 3771(e)(2)(a). "Purported victims under the CVRA must prove their victim status by a preponderance of the evidence." *United States v. Giraldo-Serna*, 118 F. Supp. 3d 377, 383 (D.D.C. 2015) (quoting *In re McNulty*, 597 F.3d 344, 351 (6th Cir. 2010)), *mandamus granted in part by In re de Henriquez*, 2015 WL 10692637 (D.C. Cir. 2015).

"The requirement that the victim be 'directly and proximately harmed' encompasses the traditional 'but for' and proximate cause analyses." *Giraldo-Serna*, 118 F. Supp. 3d at 383 (quoting

4

*In re Rendon Galvis*, 564 F.3d 170, 175 (2d Cir. 2009)). To determine whether a person is a crime victim, the CVRA "instructs the district court to look at the offense itself only to determine the harmful effects the offense has on parties." *Giraldo-Serna*, 118 F. Supp. 3d at 383 (quoting *In re Stewart*, 552 F.3d 1285, 1289 (11th Cir. 2008)). The Court must first "identify the behavior constituting 'commission of a Federal offense'" and then "identify the direct and proximate effects of that behavior on parties other than the United States." *Stewart*, 552 F.3d at 1289; *see Giraldo-Serna*, 118 F. Supp. 3d at 383 (partially quoting the same).

"A person is directly harmed by the commission of a federal offense where that offense is a but-for cause of the harm. A person is proximately harmed when the harm is a reasonably foreseeable consequence of the criminal conduct." *Giraldo-Serna*, 118 F. Supp. 3d at 383 (quoting *In re Fisher*, 640 F.3d 645, 648 (5th Cir. 2011) (internal quotation omitted) ("*Fisher I*")); *see McNulty*, 597 F.3d at 351 ("direct" harm element "requires that the harm to the victim be *closely related* to the conduct inherent to the offense, *rather than merely tangentially linked*." (emphasis added)). "The necessary inquiry is a fact-specific one." *Giraldo-Serna*, 118 F. Supp. 3d at 383 (quoting *Galvis*, 564 F.3d at 175).

Significantly, "[a]n act is a but-for cause . . . of an event if the act is a *sine qua non* of the event—if, in other words, the absence of the act would result in the non-occurrence of the event." *Giraldo-Serna*, 118 F. Supp. 3d at 386 (quoting *In re Fisher*, 649 F.3d 401, 403 (5th Cir. 2011) ("*Fisher II*")). Courts "must ask what would have happened if there had been no [crime] at all" because "[a] crime is a but-for cause of an injury only if the injury would not have occurred in the absence of the crime." *Giraldo-Serna*, 118 F. Supp. 3d at 386 (quoting *Fisher II*, 649 F.3d at 404). Thus, "an act is not a but-for cause of an event if the event would have occurred even in the absence of the act." *Giraldo-Serna*, 118 F. Supp. 3d at 386 (quoting *Fisher II*, 649 F.3d at 403).

Finally, although the CVRA gives victims the right to be reasonably heard at sentencing, the Court has wide discretion at sentencing to hear from individuals other than the parties to the criminal case, regardless of whether an individual meets the statutory definition of "crime victim" under the CVRA. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); *Pepper v. United States*, 562 U.S. 476, 488 (2011) (section 3661 permits a sentencing court to "consider the widest possible breadth of information about a defendant"); *see also United States v. Smith*, 967 F.3d 198, 216-17 (2d Cir. 2020) (district court did not err by allowing witness to speak at sentencing even if witness did not qualify as "victim" of defendant's offense because district courts "have broad discretion both as to the type of information they may consider in imposing sentence and the source from which that information derives. . . . [I]t has long been established that the Due Process Clause does not restrict a court with respect to the type of information it may consider for purposes of sentencing." (internal quotations and citations omitted)); *United States v. Fata*, 650 F. App'x 260, 265 (6th Cir. 2016) (stating that the district court had discretion to consider oral and written statements from the defendant's patients, whose status as "victims" had not been determined, at a sentencing for health care fraud).

**III.    Discussion**

    **A.  Dr. Page's status as a crime victim under the CVRA.**

Dr. Page does not meet the particular statutory definition of "crime victim" under 18 U.S.C. § 3771(e)(2)(a). Although he sets forth various harms in his motion and in his victim impact statement and declaration of losses that he submitted to the United States Probation Office, *see*

Doc. 19, these alleged harms are not the direct and proximate result of the defendant's false statement offense.

First, Dr. Page states he was harmed from the illegal surveillance conducted pursuant to the fourth FISA warrant. However, there is no indication that the FBI would have foregone applying for the fourth FISA warrant or that the FISC would have denied it absent the crime. In other words, although the defendant's alteration of the OGA email was material, it is unclear whether the outcome would have been any different. Assuming *arguendo* that the defendant did not alter the OGA email and the fourth FISA application had disclosed Dr. Page's status with the OGA, the FISC may still have granted the fourth FISA application. Accordingly, the defendant's alteration of the email cannot be the but-for cause of the continued FISA surveillance. *See Giraldo-Serna*, 118 F. Supp. 3d at 386 ("[a] crime is a but-for cause of an injury only if the injury would not have occurred in the absence of the crime." (quoting *Fisher II*, 649 F.3d at 404)).

The government recognizes that the DOJ has acknowledged that the third and fourth FISA applications lacked probable cause; however, there were numerous misstatements and omissions that, in the aggregate, caused the DOJ to make that acknowledgement, not simply the altered OGA email alone.  While it is true that there can be multiple but-for causes, *see Henriquez*, 2015 WL 10692637, at *1 (citing *Burrage v. United States*, 134 S. Ct. 881, 890-91 (2014)), the defendant's crime is not an independently sufficient act that caused the harm, because, as noted above, the FISC may have still granted the fourth FISA application absent the defendant's crime. *See Burrage*, 134 S. Ct. at 890-91 (finding that actual cause requires proof that the prohibited result would not have occurred but for the defendant's actions even in the presence of other contributing factors, and declining to find causation by simply showing that defendant's act "contribute[d] to an aggregate force . . . that is itself a but-for-cause of death."). If, for example, each misstatement

7

and omission in the fourth application process independently caused the application to lack probable cause, then the multiple but-for cause analysis would apply. But here, there is nothing indicating that each misstatement or omission would have independently caused the fourth application to be rejected.

Dr. Page also states he was harmed from threats, negative publicity, and the loss of friends, business, and financial relationships due to media attention from leaks about the first three FISA warrants and the FBI's investigation of Dr. Page. However, as Dr. Page states in his motion and victim impact statement, most of these harms occurred well before the defendant's alteration of the OGA email in June 2017 in connection with the fourth FISA warrant. *See* Dr. Page's Motion at 3 ("In April 2017, FBI employees and other government officials leaked to the media that a FISA warrant and renewals had been issued targeting Dr. Page as an alleged Russian agent. Dr. Page received a tremendous amount of adverse publicity as a result of the leak about the FISA warrants' mere existence."); Victim Impact Statement, Doc. 19 at 3, 6 (stating Dr. Page began receiving threats in March 2017 and that a media article in April 2017 "led to the continuation of more threats both that month and throughout the rest of that year."). Any harm Dr. Page suffered prior to the June 2017 alteration of the OGA email could not have been the direct and proximate result of the defendant's crime.

To the extent Dr. Page states that these harms continued from subsequent public reports that mentioned the fourth FISA warrant, Dr. Page has not demonstrated that they are the direct and proximate result of the June 2017 false statement. For example, Dr. Page discusses harm from a January 29, 2018 classified document that members of the House Permanent Select Committee on Intelligence prepared and circulated to other members of the House of Representatives. *See* Dr. Page's Motion at 6-7; *id.*, Ex. A. However, it is unclear what the House committee members would

have done in the absence of the defendant's crime. *See Giraldo-Serna*, 118 F. Supp. 3d at 386 ("[a] crime is a but-for cause of an injury only if the injury would not have occurred in the absence of the crime." (quoting *Fisher II*, 649 F.3d at 404)). Nor was it reasonably foreseeable that members of the House of Representatives would have prepared such a document, circulate it to other members, and then later declassify the document and make it public.

Moreover, Dr. Page has publicly claimed that many of these harms stemmed from other causes that predate the defendant's false statement. For example, in his motion he states that at least three banks or financial services companies have declined to do business with Dr. Page companies. *See* Dr. Page's Motion at 8. However, in a separate defamation lawsuit Dr. Page filed against Oath Inc. and the Broadcasting Board of Governors in September 2017, he asserted that these harms resulted from a defamatory article published in September 2016, before the defendant committed the charged crime in this case. *See Page v. Oath Inc.*, No. 17 CIV. 6990 (LGS), 2018 WL 1406621, at *2 (S.D.N.Y. Mar. 20, 2018) (Dr. Page "alleged that the defamatory articles also damaged [his] reputation throughout the United States and around the world, resulting in several financial institutions and potential clients refusing to do business with him." (internal quotations omitted)). Significantly, Dr. Page does not mention any public reporting of the fourth FISA application prior to the filing of this defamation lawsuit. Accordingly, the defendant's false statement in connection with the fourth FISA application cannot be the direct and proximate cause of these harms when Dr. Page previously asserted that he had already suffered the harms before information about the fourth FISA application was publicly reported.

In another lawsuit filed against the Democratic National Committee ("DNC"), Perkins Coie LLP, and other private lawyers, Dr. Page asserted that the defendants in his lawsuit spread false information that led to the defamatory articles published about Dr. Page in September 2016

and January 2017, and that "as a direct result of the false information spread by" the defendants in the lawsuit, Dr. Page's businesses suffered and will continue to suffer reputational injury and loss of business relationships, including having three banks refuse to do business with him. Complaint ¶ 47, *Page v. Democratic National Committee*, No. CIV 18 1019 (HE), 2018 WL 5044688 (W.D. Okla. Oct. 15, 2018). He further asserted that "the DNC and Perkins Coie are the primary responsible actors that must be held to account and should accept full economic responsibility for the falsehoods spread to the media in the Yahoo Report and countless others defamatory articles that targeted [Dr. Page]." *Id.* ¶ 48.

In short, Dr. Page has not met his burden to establish his status as a victim under the CVRA's definition of that term. Even Dr. Page acknowledges there are "very complex proof and causation issues[,]" Dr. Page's Supplement at 5, and the record as it stands now does not support the claim that the defendant's crime directly and proximately caused these harms. These complex causation issues are what will be resolved in Dr. Page's recently filed civil case against the defendant and others. *See McNulty*, 597 F.3d at 351 n.8 ("[t]he CVRA was not enacted to short circuit civil litigation to those with valid civil remedies available.").

In the Amicus Brief, amici curiae frame the analysis differently, alleging a different harm, and argue that Dr. Page is a victim because the defendant's actions deprived Dr. Page of a fair review of the FISA warrant application. *See* Amicus Brief at 13-14. Although the government recognizes the novel and creative argument set forth by amici curiae, they have not cited a single case where a court has found that interfering with a court's fair review of a warrant application constitutes a harm to the target of the warrant application. Nor has the government located such a case.

However, *United States v. Nix*, 256 F. Supp. 3d 272 (W.D.N.Y 2017), is instructive. In *Nix,* the defendant was convicted of Hobbs Act violations and related firearms and narcotics charges. *Id.* at 272. After the verdict but prior to sentencing, the defendant in that case filed a post-trial motion alleging that one of the jurors was ineligible to serve on the jury because of an undisclosed felony conviction, which he failed to disclose during voir dire. *Id.* at 275. Thereafter, Nix filed a motion claiming he was "directly and proximately harmed as a result of [Juror No. 3]'s commission of a federal offense," and therefore he claimed he was a "crime victim" under the CVRA. *Id.* He argued he was directly and proximately harmed because, among other things, he was "deprived of a [f]air [t]rial" and an "[i]mpartial [j]ury." *Id*. 277.  Nix claimed he suffered additional harms such as continued incarceration and the emotional distress of receiving a guilty verdict when it was illegally obtained.  *Id.* at 277.

Although the juror had not yet been charged with perjury, the district court assumed the truth of the allegations for purposes of determining whether Nix was a victim under the CVRA. *See id.* at 276 n.3. The court also noted that the CVRA applies before conviction and "the status of 'victim' may be based on allegations rather than proof." *Id.* Nonetheless, the district court found that "Nix's arguments are unpersuasive" and concluded that "Nix is not a "crime victim" for purposes of the CVRA." *Id*.  at 277-78. The Court stated:

> that the alleged harm—chiefly, conviction following the jury trial—was not a direct and proximate result—*i.e.*, the but for cause—of any perjury by Juror No. 3.  Nix does not—and cannot—argue that, if Juror No. 3 had disclosed his alleged felony convictions and a different juror served in his place, then Nix would not have been convicted at trial.  The link between Juror No. 3's alleged failure to disclose and Nix's conviction is too attenuated. Since the jury was unanimous, and the other 11 jurors agreed with Juror No. 3's conclusion, Nix cannot establish that a non-felon juror would have reached a different result.

*Id*.

The district court also doubted whether Nix could be a victim under the CVRA because "it is the Court or the body before which one is sworn to testify truthfully that is the victim of any alleged perjury—not a litigant who allegedly suffers some harm as a result of the influence of the perjured testimony." *See id.* at 276 n.3. It noted that "the victims of charged perjuries . . . were . . . the federal court system itself. The federal perjury statute, 18 U.S.C. § 1621, governs the relationship between citizens and the federal judicial process; its purpose is to punish an offender for the wrong done to the courts and the administration of justice." *See id.* at 276 n.3. (internal quotations, alterations, and citations omitted).

Similarly here, as in *Nix*, even if Dr. Page was deprived of a fair review of the application, Dr. Page cannot establish that the outcome would have been different, i.e., that the FISC would not have approved the FISA warrant had the defendant disclosed the truth about Dr. Page's relationship with the OGA. In addition, like the purpose of the perjury statute discussed in *Nix*, the false statement statute at issue here is intended to "to protect the Government from being the victim of some positive statement which has the tendency and effect of perverting normal and proper governmental activities and functions." *United States v. Dunne*, 324 F.3d 1158, 1165 (10th Cir. 2003) (quoting *Brogan v. United States*, 522 U.S. 398, 413 (1998) (Ginsburg, J., concurring)); *see United States v. Tobon-Builes*, 706 F.2d 1092, 1101 (11th Cir. 1983) ("[Section] 1001 was intended to cover deceptive practices aimed at frustrating or impeding the legitimate functions of government departments or agencies."); *United States v. Litvak*, 808 F.3d 160, 170 (2d Cir. 2015) (noting that "Section 1001 was 'designed to protect the authorized functions of governmental departments and agencies from the perversion which might result from . . . deceptive practices.'" (quoting *United States v. Shanks*, 608 F.2d 73, 75 (2d Cir. 1979)). Accordingly, the statutory victims here are the executive and judicial branches of government whose functions were

12

impacted, not Dr. Page. *See United States v. Schwartz*, No. 3:06CR2, 2006 WL 1662899, at *1–*6 (D. Conn. May 25, 2006) (holding that the victim of defendant's false statements to IRS auditors under Section 1001 regarding tax returns for two individuals was the government, not the two individuals, even though the individuals claimed that they incurred significant tax penalties as a result of the defendant's false statements).

### B. Dr. Page should be permitted to speak at sentencing.

Regardless of Dr. Page's status under the CVRA, the government believes the Court should hear from Dr. Page at the defendant's upcoming sentencing hearing. As noted above, the Court has broad discretion as to the information it may consider in imposing sentence, including hearing from individuals that are not technically victims under the CVRA. *See, e.g.,* 18 U.S.C. § 3661; *Smith*, 967 F.3d at 216-17; *Fata*, 650 F. App'x at 265. Here, it appears that Dr. Page has information, including evidence of communications between his counsel and the defendant discussing the threats that Dr. Page received before the fourth FISA warrant, which reflect on the background, character, and conduct of the defendant. Accordingly, the Court should allow him to speak at sentencing.

Finally, it bears noting that Dr. Page has recourse in the civil arena to address the harm he alleges. In fact, as the Court is aware, Dr. Page already has filed a civil lawsuit in the United States District Court for the District of Columbia against the defendant and ten other defendants for, among other things, harm resulting from the FISA applications. *See Page v. Comey*, et al, 20-cv-03460 (KBJ), Doc. 1. He will certainly have an opportunity to litigate and seek redress in that arena.

### C. The Court should decline to enter a restitution order.

Dr. Page asks the Court to determine that he is entitled to restitution under 18 U.S.C. § 3663, but he also asks the Court to decline to determine an amount of restitution under 18 U.S.C. § 3663(a)(1)(B)(ii) because of the complexity involved in determining restitution in this case. *See* Dr. Page's Supplement at 3 (summarizing "complex proof and causation issues" in fashioning an appropriate restitution order in this case). Section 3663 provides that the Court "may" order restitution. In determining whether to order restitution, the Court must consider the amount of loss sustained by the victim from the offense and the financial resources of the defendant. As Dr. Page notes in his supplemental filing, *see* Dr. Page's Supplement at 5-6, the Court may decline to issue a restitution order if "the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to any victims." 18 U.S.C. § 3663(a)(1)(B)(ii).

Since Dr. Page is not asking the Court to order an actual amount of restitution, there is no practicable reason for the Court to determine whether he is entitled to restitution. To the extent the Court deems it necessary to determine whether Dr. Page is entitled to restitution, the government submits that Dr. Page does not meet the particular definition of "victim" under 18 U.S.C. § 3663(a)(2) for the same reasons he does not meet the particular definition of "crime victim" under the CVRA. However, if the Court determines that he is a victim under 18 U.S.C. § 3663(a)(2), the government agrees with Dr. Page that the Court should decline to determine the amount of restitution for the reasons set forth in Dr. Page's Supplement and find that "the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section outweighs the need to provide restitution to any victims." 18 U.S.C.

§ 3663(a)(1)(B)(ii). Dr. Page himself notes that his pending civil case can fully consider the amount of any monetary damages, if any,

## IV.    Conclusion

For the reasons stated above, the government respectfully submits that Dr. Page has not met his burden of proof to establish his status as a victim under the CVRA. Accordingly, the government asks the Court to find that Dr. Page is not a victim under the CVRA, 18 U.S.C. § 3771(e)(2), but allow him to be heard at sentencing. The government also asks the Court to decline to determine whether Dr. Page is entitled to restitution under 18 U.S.C. § 3663, and in any case, decline to enter a restitution order under 18 U.S.C. § 3663(a)(1)(B)(ii).

Respectfully submitted,

JOHN H. DURHAM
Special Counsel
The Special Counsel's Office

Dated: January 5, 2021          By:      /s/
                                         Anthony Scarpelli
                                         Assistant United States Attorney
                                         for the District of Columbia
                                         555 Fourth Street, NW
                                         Washington, DC 20530
                                         Tel: (202) 252-7707
                                         Email: anthony.scarpelli@usdoj.gov

                                         Neeraj N. Patel
                                         Special Assistant United States Attorney
                                         for the District of Columbia
                                         U.S. Attorney's Office
                                         157 Church Street, 25th Floor
                                         New Haven, CT 06510
                                         Tel: 203-821-3700
                                         Email: neeraj.patel@usdoj.gov

CERTIFICATE OF SERVICE

      I hereby certify that on January 5, 2021, a copy of the foregoing Memorandum was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                              /s/
                                    Anthony Scarpelli
                                    Assistant United States Attorney