UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| ) | |
| v. ) | Case No. 20-cr-165-JEB |
| ) | |
| ) | |
| KEVIN CLINESMITH, ) | |
| ) | |
| Defendant ) | |
| _____ ) | |

**REPLY IN SUPPORT OF
MOTION FOR RELIEF UNDER THE CRIME VICTIMS' RIGHTS ACT**

**A.  Dr. Page Is a Victim of The Defendant's Crime**

When a law enforcement official lies to obtain a warrant without probable cause, whether the target of the warrant is a victim of that crime is not a difficult question. Based on longstanding law, the answer is yes. Nonetheless, for reasons divorced from that established law, both defendant Kevin Clinesmith and the Government contest that Carter Page ("Dr. Page") is a victim of the offense in this case under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771.

It is not surprising that Clinesmith denies that Dr. Page is a victim of the offense. After all, he has done his best to deny any real responsibility for his criminal act, as well as the consequences of it. He attempts to transform the facts of this case to portray himself as the only real "victim" before the Court. Further, although a lawyer and a law enforcement official, he claims to be the victim of *his* supposedly good faith alteration of a document—critical to whether a secret warrant

to surveil an American citizen would be issued—to make it "more accurate." This absurd reconstruction of the facts was comprehensively demolished by the Government's Sentencing Memorandum (Dkt # 22).

It is quite surprising the Government also contests that Dr. Page qualifies as a victim of Clinesmith's crime pursuant to the CVRA. Of course, the Government's pecuniary interests are now exposed because it is being sued by Dr. Page based on the unlawful acts of Clinesmith and his colleagues. The notion that Dr. Page is not a victim in this matter is so jarring and untenable that the Government attempts to ameliorate it by agreeing that Dr. Page should be allowed to speak at sentencing. But federal courts are not in the habit of permitting persons other than victims to speak at criminal sentencings.[1] The "compromise" tendered by the Government implicitly acknowledges that Dr. Page *is* a victim of Clinesmith's offense. The Government will not openly admit this obvious conclusion, evidently because of its own financial exposure to Dr. Page's pending suit for damages.

Under the CVRA, a "crime victim" is "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C. § 3771(e)(2)(A). "The requirement that the victim be 'directly and proximately harmed' encompasses the traditional 'but for' and proximate cause analyses." *United States v. Giraldo-Serna*, 118 F. Supp. 3d 377, 383 (D.D.C. 2015) (citing *In re Rendon Galvis*, 564 F.3d 170, 175 (2d Cir.

---

[1] In a few cases, courts have permitted a victim of <u>another</u> offense committed by the defendant to speak at sentencing. *See, e.g., United States v. Smith*, 967 F.3d 198, 215-16 (2d Cir. 2020); *United States v. Spiwak*, 377 F. App'x 319, 323 (4th Cir. 2010); *United States v. Credit Suisse AG*, 2014 WL 5026739, at *5 (E.D. Va. 2014).

2009)). "[B]ut-for causation is 'not a difficult burden to meet,' and there can be 'many but-for causes.'" *United States v. Mun*, --- F. App'x ----, 2020 WL 7417176, at *2 (5th Cir. 2020) (citation omitted). Further, "a person is 'proximately harmed' when the harm is 'a reasonably foreseeable consequence of the criminal conduct.'" *Id.* at *3 (citation omitted).

Dr. Page does not seek to be heard as an "interested citizen" pursuant to the Court's broad discretion to receive evidence at sentencing. *See* 18 U.S.C. § 3661. Dr. Page is a victim of this offense and entitled to speak at the sentencing pursuant to his rights under the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771.

The Government and Clinesmith make essentially the same argument about why Dr. Page was supposedly not directly and proximately harmed by Clinesmith's offense. Their arguments share the same two faulty premises.

The first is that Dr. Page is not a victim of Clinesmith's offense because there were so many other misstatements and omissions in the warrant application that Clinesmith's crime might not have made a difference. This is akin to arguing that, where multiple assailants stab someone who then dies of exsanguination, none is guilty because it cannot be established which one caused the death. This is nonsensical as the decedent in such a case is the victim of <u>each</u> assailant.[2] In this

---

[2] The Supreme Court has recognized that an act can be a but-for cause where it combines with or builds upon other causes. *See Burrage v. United States*, 571 U.S. 204, 211 (2014) ("if poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise"). *Burrage* also "would permit a jury to find causation when two sufficient causes independently and concurrently caused death." *United States v. Campbell*, 963 F.3d 309, 316 (4th Cir. 2020).

3

case, Dr. Page was the victim of all the material falsities in the FISA warrant application, including Clinesmith's false statement. [3]

Moreover, Clinesmith admitted in his guilty plea that his alteration of the email created a statement he knew was <u>materially</u> false. *See* Statement of Offense at ¶ 17. For a statement to be materially false, it "must have 'a natural tendency to influence, or [be] capable of influencing, the decision of the decision-making body to which it was addressed.'" *United States v. Gaudin*, 515 U.S. 506, 509 (1995). Thus, he has already admitted—and the Government agrees—that, notwithstanding all of the other misstatements and omissions in the warrant application, his offense conduct had a natural tendency to influence, or was capable of influencing, whether the warrant would issue. Neither he nor the Government can now invoke the other misstatements and omissions in the application as grounds to deny Clinesmith's responsibility for the ensuing illegal surveillance of Dr. Page.

The second faulty premise is that the FISC may still have granted the warrant application even if both the Department of Justice ("DOJ") and the FISC had been truthfully advised that Dr. Page—who was supposedly a Russian agent—had actually been a CIA source. This freshly minted contention denigrates the

---

[3]Furthermore, the Supreme Court has recognized that "courts have departed from the but-for standard where circumstances warrant, especially where the combined conduct of multiple wrongdoers produces a bad outcome." *Paroline v. United States*, 572 U.S. 434, 451 (2014) (citing *Burrage,* 571 U.S. at 214). In *Paroline,* - a victim's rights case - the defendant was one of thousands of offenders who had harmed the child victim by viewing pornographic pictures of her. The Court ruled that she was entitled to restitution under a provision covering losses that are the "proximate result" of an offense. It construed this provision to authorize "restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." *Id.* at 458.

acuity of both the DOJ and the FISC, and mischaracterizes the significance of defendant's false statement.

It is remarkable that the Government would argue that the FISC would have approved such a warrant application had it been presented. Rather, the revelation that Dr. Page was a CIA source would have required DOJ, pursuant to FISC Rule 13a, to correct the three previous warrant applications in addition to disclosing this information in the fourth application. This would have highlighted the significance of the information both to the DOJ and to the FISC. The contention that, nonetheless, the warrant would still have been issued under such circumstances is absurd.

The Horowitz Report[4] is instructive on these points. First, it makes clear that DOJ was misled or at least in the dark when it presented the warrant applications to the FISC. "None of the inaccuracies and omissions that we identified in the renewal applications were brought to the attention of OI before the applications were filed. As a result, similar to the first application, the Department officials who reviewed one or more of the renewal applications . . . did not have accurate and complete information at the time they approved them." Horowitz Report at xiii. Had DOJ been accurately informed as to Dr. Page's status, it might not have even proceeded with the application. Had it done so, as noted, it would have been obliged to address why this critical information, which directly

---

[4] U.S. Dep't of Justice Office of Inspector General, 20-012, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* (December 2019).

5

undermines the rationale for the surveillance in the first place, had been omitted from the prior applications.

Second, the significance of Dr. Page's status as a CIA source cannot be overstated.  The affiant for the fourth warrant application advised the DOJ Office of Inspector General that he understood Clinesmith's "comment about not having to draft a 'terrible footnote' to mean that the team could avoid having to explain in Renewal Application No. 3 that they had 'just now come to determine that [Page] was an asset of the [other agency] and probably being tasked to engage ... [with] Russians which is ... *why we opened a case on him*.'  [The affiant] said that he understood [Clinesmith] to be saying that 'the optic...would be terrible' if the prior FISA applications were 'dubious' *in light of a relationship between Page and the other agency*, and the FBI was only becoming aware of that relationship in the third renewal application and after Page's public statements." Horowitz Report at 253-254 (Emphasis added).  The information went directly to the issue of Dr. Page's loyalty.

Nor is it impracticable to retrospectively assess the impact of Clinesmith's offense on the issuance of the FISA warrant, as Clinesmith and the Government suggest.  Courts regularly do this in the course of evaluating *Franks'*[5] motions. They "ask whether a warrant would have issued in a but-for world where the attesting officer faithfully represented the facts." *United States v. Herrera*, 782 F.3d 571, 575 (10th Cir. 2015) (Gorsuch, J.).

---

[5] *Franks v. Delaware*, 438 U.S. 154 (1978).

The answer here is clear: the warrant would not have issued. The FISA warrant application as written was razor thin, even when bolstered by the numerous and serious misstatements and omissions. Absent any one of them, the application would not have been granted. It is virtually certain that the application would not have been approved had the DOJ and the FISC been truthfully advised of Dr. Page's longstanding history as a CIA source about Russia, a fact which <u>directly undercut</u> the premise that Dr. Page was a Russian agent.

The Government also makes a formalistic argument that "the statutory victims here are the executive and judicial branches of government whose functions were impacted, not Dr. Page." (Gov. Response at 12-13). But the CVRA does not limit "crime victim[s]" to "statutory victims" defined by reference to the substantive offense of conviction. *See* 18 U.S.C. § 3771(e)(2)(A). And, as Dr. Page pointed out in his opening brief, courts have repeatedly held that individuals, not just branches of government, can be victims of criminal false statements. *See United States v. Contreras,* 16-00740 HG-01, 2017 WL 2563222 (D. Haw. June 13, 2017) (a correctional officer's false statements that concealed from DOJ officials his inappropriate relationship with an inmate directly and proximately harmed the inmate); *United States v. Williams*, 811 Fed. Appx. 690 (2d Cir. 2020) (a bank was the victim of false statement where loss to the bank was the foreseeable result); *United States v. Hoover*, 175 F.3d 564, 566–69 (7th Cir. 1999) (university was a victim of a false statement because it provided a tuition loan based on defendant's misrepresentations in loan application).

The Ninth Circuit has also explained that there can be multiple victims of a criminal false statement. "Obviously, [the defendant's] action in obstructing justice and lying to the FBI and the grand jury directly victimized the federal government. Just as clearly, [the defendant] directly targeted and victimized [the murder victim's] family." *United States v. Haggard*, 41 F.3d 1320, 1327 (9th Cir. 1994). So too here. Clinesmith directly targeted and victimized not only the FISC, but also Dr. Page.[6]

### B.    Dr. Page Has a Right to Restitution

The Government and Clinesmith also urge the Court not to rule on whether Dr. Page is entitled to restitution. The Government argues that "[s]ince Dr. Page is not asking the Court to order an actual amount of restitution, there is no practicable reason for the Court to determine whether he is entitled to restitution." (Gov. Response at 14). Clinesmith argues that there is no live dispute as to restitution and that Dr. Page's claim should be denied as moot. They are wrong.

Plainly there is a live dispute as to restitution because both the Government and Clinesmith deny that Dr. Page is entitled to any restitution. Since Dr. Page is

---

[6]Clinesmith complains about an alternative analysis of why Dr. Page is a victim of this offense, offered by amici, on the grounds that it was not advanced by Dr. Page in his motion. Clinesmith contends that Dr. Page thereafter adopted amici's argument, but asserts that this was too late, notwithstanding that Clinesmith has had full opportunity to respond to it. As Dr. Page previously pointed out in his notice regarding amici's motion to file a brief in this matter: "Presenting differing or complementary analysis to the Court on an issue does not constitute 'raising a new issue.' Indeed, it is precisely the role of amici to present third party perspective and analysis to assist the Court in addressing the issue before it." Dkt # 30 at p. 2. The courts concur. *See Ryan v Commodity Futures Trading Comm*, 125 F3d 1062, 1063 (CA 7, 1997)(amici should not simply "duplicate the arguments made in the litigants' briefs."); *WildEarth Guardians v Zinke*, 368 F Supp 3d 41, 59 (DDC, 2019)(rejecting the filing of an amicus brief that presented no new arguments).

8

a victim of the offense, he has "[t]he right to full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6). And the CVRA imposes on the Court an affirmative obligation to "ensure" that Dr. Page's rights are "afforded." 18 U.S.C. § 3771(b).

As the victim of a criminal false statement, Dr. Page is entitled to permissive restitution under 18 U.S.C. § 3663. That statute requires the Court to "determin[e] whether to order restitution." § 3663(a)(1)(B)(i). The Court may decline to enter a restitution order if it determines that the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution outweighs the need to provide restitution. *See* § 3663(a)(1)(B)(ii). Dr. Page has acknowledged that it is appropriate for the Court to invoke this provision in this case for the reasons set forth in the supplement to his motion, which was submitted at the Court's request for clarification of Dr. Page's position as to restitution. This does not mean that the Court should ignore the issue of restitution, as the Government and Clinesmith suggest. It means that the Court should find on the record that Dr. Page, as a victim, has the right to restitution, but that the Court, for a valid reason, will not attempt to resolve the amount of restitution in this case. The outcome requested by Dr. Page follows precisely the statutory pathway for situations such as this one.

### C. Conclusion

WHEREFORE, Dr. Page respectfully submits that the Court should find that he is a victim of the offense in this case, permit him to be heard at the sentencing, and find that he is entitled to restitution but decline to determine the amount in this case.

Respectfully submitted,


_____/s/_____
Leslie McAdoo Gordon
DC BAR #456781
McAdoo Gordon & Associates, P.C.
1140 19th Street, NW, Suite 602
Washington, DC 20036
(202) 293-0534 telephone
(202) 478-2095 facsimile
leslie.mcadoo@mcadoolaw.com



_____/s/_____
K. Lawson Pedigo
Bar ID: TX0186
MILLER KEFFER & PEDIGO PLLC
3400 Carlisle Street, Suite 550
Dallas, Texas 75204
Telephone: (214) 696-2050
klpedigo@mkp-law.net

*Attorneys for Carter Page*

10

## CERTIFICATE OF SERVICE

I hereby certify that, on January 12, 2021, a copy of the foregoing Reply in Support of Motion for Relief Under the Crime Victims' Rights Act was served electronically on:

Justin Shur
Emily Kathryn Damrau
Megan Cunniff Church
Jordan Rice
MoloLamken LLP
600 New Hampshire Avenue, NW
Suite 660
Washington, DC 20037

Anthony F. Scarpelli
U.S. Attorney's Office for the District of Columbia
555 Fourth Street, NW
Washington, DC 20530

Neeraj Patel
Special Assistant United States Attorney
157 Church Street
25th Floor
New Haven, CT 06510

James R. Marsh
Marsh Law Firm PLLC
31 Hudson Yards, 11th Floor
New York, NY 10001

Paul G. Cassell
University of Utah
383 S. University St.
Salt Lake City, UT 84112

                                                  _____/s/_____
                                                  Leslie McAdoo Gordon